IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **TRIAD INTERNATIONAL MAINTENANCE CORP.,** | : | |
| | : | Case No. 2:04-cv-1200 |
| **Appellant,** | : | Judge Holschuh |
| v. | : | |
| **SOUTHERN AIR TRANSPORT, INC.,** | : | |
| | : | |
| **Appellee.** | : | |

**MEMORANDUM OPINION AND ORDER**

Appellant Triad International Maintenance Corporation ("TIMCO") has filed this appeal from the Judgment Entry entered in favor of Appellee Southern Air Transport, Inc. ("SAT") as well as the order denying TIMCO's motion to alter or amend the Judgement Entry entered in the adversary proceeding: <u>Southern Air Transport, Inc. v. TIMCO</u>, Case No. 00-2041, arising out of the Chapter 11 bankruptcy case pending before the United States Bankruptcy Court for the Southern District of Ohio: <u>In re: Southern Air Transport, Inc.</u>, Case No. 98-59460.  This Court has appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

**I.  Background**

    **A.  Facts**

SAT is a Nevada corporation with its principal place of business in Columbus, Ohio. SAT is in the business of air transportation of cargo.  TIMCO is a Delaware corporation with its principal place of business in Greensboro, North Carolina.  TIMCO is in the business of servicing, repairing, maintaining and storing aircraft.

In May 1992, SAT entered into an Aircraft Maintenance Agreement ("Maintenance

Agreement") with TIMCO for the provision of maintenance services. Thereafter, on May 9, 1994, SAT entered into an Aircraft Lease Agreement ("Lease") with Aerolease Financial Group, Inc. ("Aerolease") whereby Aerolease agreed to lease a used McDonnell Douglas Model DC8-73 Aircraft ("Aircraft") to SAT for a period of five years. As a result of the Lease, SAT and TIMCO amended the Maintenance Agreement in November 1997 so as to provide certain maintenance, overhaul and repair services, known as a "C" check, with respect to the leased Aircraft.

In November 1997, SAT delivered the Aircraft to TIMCO in North Carolina, along with a $250,000 prepayment, to perform the "C" check on the Aircraft. By February 1998, TIMCO had substantially completed the "C" check and issued invoices for the labor, material and services provided. Between February 1998 and April 1998, TIMCO performed additional services on the Aircraft. On April 1, 1998, TIMCO sent SAT a letter advising SAT of the completion of the requested work and demanded payment in full of the amount due, $3,511,842.60. SAT indicated that it would make a partial payment of $3,000,000 and requested additional services, *i.e.,* a "D" check.

Following continued negotiations between SAT, TIMCO and Aerolease, TIMCO agreed to provide additional repairs and services with respect to the Aircraft. In return, SAT paid an additional $500,000 towards its invoices and Aerolease agreed to guarantee payment for any remaining balances, up to $1,000,859.15. Thereafter, a balance of $757,096.47 remained unpaid.

In August 1998, SAT requested additional repairs, known as an "E" check, as well as additional "bridge out" work on the Aircraft. TIMCO indicated that it would only provide such services if SAT agreed to make an additional $100,000 payment towards the outstanding balance

due.  SAT agreed, and on August 11, 1998, wired TIMCO the $100,000 payment.  TIMCO then completed all the work that had been requested by SAT and/or Aerolease.  Thereafter, on September 10, 1998, Aerolease paid the remaining balance due of $657,096.47.  TIMCO thereafter executed a form required by the Federal Aviation Administration ("FAA") with respect to the Aircraft.  Additionally, TIMCO released possession of the Aircraft to SAT, thereby releasing an alleged artisan's lien it had claimed with respect to the Aircraft.

    **B.  Procedural History**

On October 1, 1998, SAT commenced the bankruptcy case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Thereafter, the bankruptcy trustee, on behalf of SAT, sought to avoid the August 11, 1998 payment of $100,000 to TIMCO as a preference.  On October 23, 1998, the bankruptcy trustee appointed the "Official Committee of Unsecured Creditors of Southern Air Transport, Inc. ("Committee").  On February 9, 2000, the Committee instituted an adversarial proceeding on behalf of SAT to recover the $100,000 payment to TIMCO.

SAT and TIMCO filed cross-motions for summary judgment.  On January 4, 2002, the Bankruptcy Court granted SAT's motion for summary judgment and denied TIMCO's motion for summary judgment, concluding that the $100,000 payment to TIMCO was an avoidable preference.  Thereafter, TIMCO filed a motion to: (1) amend or make additional findings of fact, and (2) to alter or amend judgment.  The Bankruptcy Court denied TIMCO's motion to alter or amend judgment.

**II. Issues on Appeal**

Generally, TIMCO appeals the Bankruptcy Court's decision that the $100,000 payment from SAT was an avoidable preference payment under § 547(b) of the Bankruptcy Code and that none of the exceptions provided in § 547(c) applied. In particular, TIMCO argues that the Bankruptcy Court erred by concluding that it was not a fully secured creditor of SAT at the time of the $100,000 payment. Additionally, TIMCO argues that the Bankruptcy Court erred by concluding that TIMCO did not provide "new value" in exchange for, or subsequent to, the $100,000 payment.

**III. Discussion**

    **A. Standard of Review**

On review, the Bankruptcy Court's factual findings are examined for clear error. Fed. R. Bankr. P. 8013; Copper v. Copper (In re Copper), 314 B.R. 628, 630 (B.A.P. 6th Cir. 2004), aff'd, 426 F.3d 810 (6th Cir. 2005); In re Eagle-Picher Industries, Inc., 285 F.3d 522, 527 (6th Cir.), cert. denied, 537 U.S. 880 (2002). "A finding of fact is clearly erroneous 'when[,] although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.'" United States v. Mathews (In re Mathews), 209 B.R. 218, 219 (B.A.P. 6th Cir. 1997)(quoting Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985)). Questions of law, on the other hand, are reviewed *de novo*. Copper, 314 B.R. at 630. Under the *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination. Id. Mixed questions of law and fact must be separated into their constituent parts and each analyzed using the appropriate standard of review. In re Eagle-Picher Industries, Inc., 285 F.3d at 527 (citing

Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Financial Servs., Inc.), 106 F.3d 1255, 1259 (6th Cir.), cert. denied, 522 U.S. 816 (1997)).

    **B. Application**

        **1. Preference Payments under Section 547(b)**

TIMCO argues that the Bankruptcy Court erred by concluding that the $100,000 payment from SAT was an avoidable preference. Section 547 of the Bankruptcy Code allows the bankruptcy trustee to avoid certain transfers made by a debtor prior to filing a petition for bankruptcy. In particular, § 547(b) provides in relevant part:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property–
>
>     (1) to or for the benefit of a creditor;
>
>     (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
>     (3) made while the debtor was insolvent;
>
>     (4) made –
>
>         (A) on or within 90 days before the date of the filing of the petition; or
>
>         (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
>     (5) that enables such creditor to receive more than such creditor would receive if –
>
>         (A) the case were a case under chapter 7 of this title;
>
>         (B) the transfer had not been made;

and

> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The purpose of § 547(b) is to prevent a debtor from favoring certain creditors over others similarly situated. See Ray v. City Bank and Trust Co. (In re C-L Cartage Co., Inc.), 899 F.2d 1490, 1492, 1495 (6th Cir. 1990). "When a debtor is insolvent, a transfer to one creditor necessarily impairs the claims of the debtor's other unsecured and undersecured creditors." Union Bank v. Wolas, 502 U.S. 151, 161 (1991); Stevenson v. Leisure Guide of America, Inc. (In re Shelton Harrison Chevrolet, Inc.), 202 F.3d 834, 837 (6th Cir. 2000) (section 547(b) is designed to "prevent a transfer to one creditor that would diminish the estate of the debtor that otherwise would be available for distribution to all").

The Bankruptcy Court held that all five elements of § 547(b) were satisfied and that, therefore, the $100,000 payment was an avoidable preference. TIMCO does not contend that the Bankruptcy Court erred with respect to the first four elements of § 547(b).[1] Instead, TIMCO argues that it had a possessory artisan's lien under North Carolina law and was, therefore, a fully secured creditor of SAT. The result, TIMCO contends, is that the fifth element of § 547(b) was not satisfied.

As a general rule, payment to a fully secured creditor will not constitute a preferential transfer because that creditor would be entitled to full payment in the event of a chapter 7

---

[1] In any event, this Court agrees that the first four elements have been satisfied. There is no dispute that the $100,000 payment from SAT was for the benefit of TIMCO, a creditor, that it was on account of an antecedent debt and that it was made within 90 days of SAT's petition. Moreover, a debtor is presumed insolvent within 90 days of the petition. 11 U.S.C. § 547(f).

bankruptcy. First Tennessee Bank, N.A. v. Stevenson (In re Cannon), 237 F.3d 716, 720 (6th Cir. 2001)(citation omitted); Ray, 899 F.2d at 1493. The Bankruptcy Court held that TIMCO was not a fully secured creditor because TIMCO failed to meet the filing requirements of the Federal Aviation Act ("Aviation Act"), 49 U.S.C. §§ 44107, 44108. TIMCO, however, argues that it had a valid lien under North Carolina law and that the filing requirements of the Aviation Act do not apply in this case.

Assuming, for the purpose of this appeal, that TIMCO held a valid non-consensual possessory artisan's lien under North Carolina law, this Court nevertheless agrees that TIMCO did not qualify as a fully secured creditor due to the operation of FAA filing requirements. Pursuant to § 44107, "[t]he Administrator of the Federal Aviation Administration shall establish a system for recording– (1) conveyances that affect an interest in civil aircraft of the United States...." 49 U.S.C. § 44107(a)(1). Section 44108 then provides, in relevant part, that:

> [u]ntil a conveyance, lease or instrument executed for security purposes that may be recorded under section 44107(a)(1) or (2) of this title is filed for recording, the conveyance, lease, or instrument is valid only against–
>
> (1) the person making the conveyance, lease, or instrument;
>
> (2) that person's heirs and devisees; and
>
> (3) a person having actual notice of the conveyance, lease, or instrument.

49 U.S.C. § 44108(a). Thus, in order for a conveyance, lease or instrument executed for security purposes to be valid as against an innocent third party, such interest must be recorded with the FAA.

In this case, TIMCO concedes that it did not attempt to file a notice of its artisan's lien

7

with the FAA. However, TIMCO contends that no such filing was required under the circumstances of this case. North Carolina does not allow an artisan to file notice of a lien with the state, and TIMCO suggests that the FAA has taken the position that it will not accept notice of an artisan's lien for filing where no such filing would be accepted by the state in which the lien arose. (Brief of Appellant at pp. 11-15 (citing Affidavit of Joseph R. Standell, at ¶ 6-8; Affidavit of Julie A. Stanford, at ¶¶ 7-12)). TIMCO therefore argues that it was not required to file its notice of artisan's lien with the FAA.

This Court cannot agree with TIMCO's position. The language of the statute clearly requires filing a notice regarding all "conveyances" affecting title to an aircraft. The implementing regulations specifically state that the following types of "conveyances" are subject to the FAA recording requirements: "A bill of sale, contract of conditional sale, assignment of an interest under a contract of conditional sale, mortgage, assignment of mortgage, lease, equipment trust, notice of tax lien or *of other lien*, or other instrument affecting title to, or *any interest in*, aircraft." 14 C.F.R. § 49.31(a) (emphasis added).[2] The regulations also contain eligibility requirements for recording. Those requirements, however, do not include a requirement that notice of the artisan's lien must have been filed in the state where the lien arose. See 14 C.F.R. § 49.33.

In 1983, the Supreme Court confirmed that, under the Aviation Act, every conveyance affecting title to an aircraft "must be evidenced by an instrument, and every such instrument

---

[2]The regulations note that "[t]he recording of a conveyance is not a decision of the FAA that the instrument does, in fact, affect title to, or an interest in, the aircraft or other property it covers." 14 C.F.R. § 17(c). Instead, the filing requirement is merely intended to provide notice to third parties. The validity of the instrument is determined by state law.

must be recorded, before the rights of innocent third parties can be affected." Philko Aviation, Inc. v. Shacket, 462 U.S. 406, 409-10 (1983) (applying 49 U.S.C. § 1403, which is the predecessor to the federal registration and recordation provisions currently located in 49 U.S.C. §§ 44107 and 44108). Accordingly, "all interests [in an aircraft] must be federally recorded before they can obtain whatever priority to which they are entitled under state law." Id., at 413.

While Philko did not specifically discuss artisan's liens, numerous lower courts have concluded that the term "conveyance" found in § 44107 and § 44108 is broad enough to include artisan's liens. See Danning v. Pacific Propeller, Inc. (In re Holiday Airlines Corp.), 620 F. 2d 731, 735 (9th Cir.), cert. denied, 449 U.S. 900 (1980) ("We cannot accept an argument that artisans' liens are not within the ambit of the Act"); Southern Air Transport, Inc. v. Northwings Accessories Corp. (In re Southern Air Transport, Inc.), 255 B.R. 715, 721 (Bankr. S.D. Ohio 2000) (noting that mechanic's liens against aircraft are subject to the mandatory FAA filing requirements); Aero Support Systems, Inc. v. FDIC, 726 F. Supp. 651, 653 (N.D. Texas 1989); South Shore Bank v. International Jet Interiors, Inc., 721 F. Supp. 29, 32-33 (E.D. N.Y. 1989); Southern Horizons Aviation v. Farmers & Merchants Bank of Lakeland, 231 Ga.App. 55, 56 (1998) ("A mechanic's lien which has not been recorded with the FAA is not valid").

The Bankruptcy Court in this case relied heavily on its earlier decision in Northwings to support its conclusion that filing a notice of an artisan's lien with the FAA is necessary. While the facts of Northwings are distinguishable, in that Northwings dealt with aircraft parts as opposed to the aircraft itself, its reasoning and application of Philko is directly on point. The court in Northwings specifically noted that, while possessory liens are often not evidenced by a

writing, notice of the mechanic's lien against a civil aircraft must be filed with the FAA to be valid against third parties. Northwings, 255 B.R. at 722.[3]

TIMCO argues that the United States Bankruptcy Court for the District of Delaware has rejected Northwings. (Brief of Appellant at pp. 23-26 (citing Stanziale v. Pratt & Whitney (In re Tower Air, Inc.), 319 B.R. 88 (Bankr. D. Del. 2004)). However, like Northwings, Stanziale dealt with aircraft parts. The Stanziale court disagreed with Northwings only with respect to aircraft parts. See Stanziale, 319 B.R. at 98. Stanziale specifically noted the difference between § 44107(a)(1), dealing with aircraft, and § 44017(a)(2), dealing with aircraft parts. Id. Additionally, the court that decided Stanziale has specifically recognized that "[r]eading the Act along with its implementing regulations leaves no doubt that liens must be recorded to be valid against third parties." TWA Inc. v. USDA (In re TWA Inc. Post Confirmation Estate), 312 B.R. 759, 763 (Bankr. D. Del. 2004). The TWA court cited Northwings in support of its conclusion that a "conveyance" includes an artisan's lien. TWA Inc., 312 B.R. at 763.

Additionally, the Court finds the following two cases helpful in resolving TIMCO's contentions. In Aero Support Systems, Inc., a plaintiff provided repairs, inspections and maintenance with respect to an aircraft located in Texas. When the owner of the aircraft failed to make payment, the plaintiff claimed a mechanic's lien under Texas law. The court held that, because the plaintiff had not recorded its interest with the FAA, the plaintiff's interest could not be enforced against an innocent third party. Aero Support Systems, Inc., 726 F. Supp. at 653. It appears that Aero Support Systems, Inc. was decided before the FAA began accepting artisan

---

[3]The court in Northwings held that there is no basis for engaging in a different analysis where spare aircraft parts are at issue and, therefore, notice of mechanic's liens on such parts must be filed with the FAA. Northwings, 255 B.R. at 722-24.

lien filings from the state of Texas.[4]

Similarly, in South Shore Bank, the defendant asserted a lien against an aircraft for certain work performed on that aircraft. Although the defendant attempted to file notice of its lien with the FAA, the FAA rejected the defendant's attempt. South Shore Bank, 721 F. Supp. at 30. Nevertheless, the court held that, because the defendant had not recorded its interest with the FAA, it could not take priority over the plaintiff's interest in the aircraft. Id., at 32-33.

In fact, TIMCO has not identified, nor is this Court aware of, any post-Philko case in which it was held that an artisan's lien affecting an interest in an aircraft need not be recorded with the FAA if the lien would not be accepted for filing in the state where the lien arose. Instead, TIMCO submits the affidavits of Joseph Standell, Aeronautical Center Counsel for the Aeronautical Center of the FAA, and Julie Stanford, Manager, Aircraft Registration Branch of the FAA, in support of its position. Attached to both affidavits are opinions issued by Aeronautical Center Counsel of the FAA regarding the recording of artisan's liens with the FAA.

While the affidavits and opinions submitted by TIMCO may in fact reflect the policy of the FAA, or at least the Aeronautical Center and the Aircraft Registration Branch of the FAA, those affidavits and opinions are simply inconsistent with the language of the Aviation Act, its implementing regulations and the decisions of the Supreme Court along with numerous lower courts. See Air Brake Systems, Inc. v. Mineta, 357 F.3d 632, 643 (6th Cir. 2004) (citations omitted). For example, as noted by the Supreme Court, "the primary congressional purpose [of §

---

[4]According to TIMCO's exhibits, the FAA advised that it would accept artisan lien filings from Texas on September 19,1989, (Exhibit A-1, attached to Affidavit of Julie A. Stanford)(citing Federal Register, Vol. 54, No. 180, page 38584). Aero Support Systems, however, was decided in April 1989.

11

44107] ... was to create 'a central clearing house for recordation of titles so that a person, wherever he may be, will know where he can find ready access to the claims against, or liens, or other legal interests in an aircraft.'" Philko, 462 U.S. at 411 (quoting Hearings before the House Comm. On Interstate and Foreign Commerce, 75 Cong., 3d Sess., p. 407 (April 1, 1938) (testimony of F. Fagg, Director of Air Commerce, Dept. of Commerce)).  Allowing certain liens to be filed with the FAA while rejecting others would appear to be in conflict with this clear congressional purpose.

      Finally, this Court notes that the Aeronautical Repair Station Association ("ARSA") has filed an *amicus curiae* brief urging this Court to reverse the Bankruptcy Court's conclusion that filing a notice of an artisan's lien with the FAA is necessary even where the state in which the lien arose would not require such a filing.  ARSA contends that such a requirement will place businesses in states such as North Carolina at a disadvantage with respect to competitors from other states.  However, ARSA relies on the same authority that was cited by TIMCO.  As was discussed *supra*, this Court must reject that authority in light of the language of the Aviation Act, its implementing regulations and the decisions of the Supreme Court along with numerous lower courts.

      This Court concludes that, even if TIMCO's artisan's lien was valid under North Carolina law, it is not enforceable against the bankruptcy trustee, because TIMCO failed to record its interest with the FAA.  Thus, it cannot be said that TIMCO was a fully secured creditor.  The Bankruptcy Court, therefore, correctly determined that the fifth element of § 547(b) had been satisfied.

### 2. "New Value" Exceptions

TIMCO also argues that the Bankruptcy Court erred by concluding that the $100,000 payment from SAT was not excepted from § 547(b) because no "new value" was provided by TIMCO. Section 547(c) establishes certain exceptions to avoidable preferences. TIMCO argues that subsections (c)(1) and (c)(4) apply in this case. The relevant provisions provide:

> (c) The trustee may not avoid under this section a transfer –
>
> (1) to the extent that such transfer was –
>
> > (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
> >
> > (B) in fact a substantially contemporaneous exchange;
>
> \*         \*         \*
>
> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor –
>
> > (A) not secured by an otherwise unavoidable security interest; and
> >
> > (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor....

11 U.S.C. § 547(c)(1), (4). The purpose of these exceptions is to "encourage creditors to continue doing business with troubled debtors who may then be able to avoid bankruptcy altogether." Stevenson, 202 F.3d at 837 (citations omitted); Phoenix Restaurant Group, Inc. v. Ajilon Professional Staffing LLC (In re Phoenix Restaurant Group, Inc.), 317 B.R. 491, 495

13

(Bankr. M.D. Tenn. 2004) (citations omitted); Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.), 315 B.R. 443, 468 (Bankr. S.D. Ohio 2004).

Additionally, as was discussed *supra*, the purpose of § 547(b) is to prevent a debtor from preferring certain creditors over others. See Ray, 899 F.2d at 1495. The provision of new value can save an otherwise preferential payment because "'a creditor who contributes new value in return for payments from the incipient bankrupt ... should not later be deemed to have depleted the bankruptcy estate to the disadvantage of other creditors.'" Phoenix Restaurant Group, Inc., 317 B.R. at 495; Roberds, 315 B.R. at 468.

In order to satisfy the elements of § 547(c)(1) and/or § 547(c)(4), TIMCO bears the burden of demonstrating, *inter alia*, that "new value" was provided to SAT. 11 U.S.C. § 547(g). The Bankruptcy Code defines "new value" as

> money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation....

11 U.S.C. § 547(a)(2).

The Bankruptcy Court concluded that TIMCO had failed to meet its burden of demonstrating that new value had been provided:

> The property in this case is the Aircraft not owned by the Debtor. The possessory interest claimed by TIMCO in SAT's leasehold interest in the Aircraft does not exist, and TIMCO failed to file notice with the FAA to perfect its interest by filing notice with the FAA. The Lessor made the final payments due for the "C" check, "D" check and "E" check and related work relative to the Aircraft. TIMCO did not provide subsequent new value pursuant to Section 547(c)(1).

14

(Order on Cross-Motions for Summary Judgment, at p. 14). The Bankruptcy Court's conclusion that TIMCO did not provide new value appears to be based on its conclusion that TIMCO did not hold an enforceable lien in SAT's leasehold interest in the Aircraft.

TIMCO argues that the Bankruptcy Court erred by concluding that there was no contemporaneous exchange for new value under § 547(c)(1). The contemporaneous exchange exception has three elements: (1) both the debtor and the creditor must intend the transfer to be a contemporaneous exchange; (2) the exchange must, in fact, be contemporaneous; and (3) the exchange must be for new value. Stevenson, 202 F.3d at 837 (citation omitted). This Court agrees that TIMCO has failed to establish the existence of a contemporaneous exchange for new value.

The $100,000 payment to TIMCO was undisputably a payment on SAT's past due debt to TIMCO. This was not a contemporaneous exchange for new value given to the debtor under § 547(c)(1). The Sixth Circuit has recognized that the contemporaneous exchange exception was meant to apply to cash sale transactions, and not transfers on account of an antecedent debt.[5] See Ray v. Security Mutual Finance Corp. (In re Arnett), 731 F.2d 358, 361 (6th Cir. 1984). The facts in Staats v. Branham Sign Co. (In re Circleville Distributing Co.), 84 B.R. 502 (Bankr. S.D. Ohio 1988), are similar to the present case. Preferential payments were made by the debtor to a creditor only after the creditor refused to perform additional work unless the debtor paid the arrearage. The court held, properly, that there was no new value given contemporaneously to the payment.

---

[5]The Sixth Circuit did note, however, that the exchange of goods or other "value" for a check is included in the exception even though it may technically be a credit transaction. Ray, 731 F.2d at 361.

15

Although the $100,000 payment on the antecedent debt did reduce the debt owed to TIMCO, the corresponding obligation to Aerolease,[6] and the amount of the lien against the Aircraft that existed at the time of the payment, these were simply the natural consequences of the preferential payment and there has been no showing as to what extent, if any, the payment increased the value of SAT's leasehold interest or otherwise provided some tangible benefit to SAT's estate.

Nor can TIMCO successfully contend that the services performed by TIMCO subsequent to the preferential payment qualify as new value under section 547(c)(4) of the Bankruptcy Code. It appears undisputed that TIMCO proceeded to do additional work on Aerolease's Aircraft following the August 11, 1998 payment from SAT. However, there is no indication that TIMCO extended any new credit to SAT or otherwise provided some tangible benefit to SAT's estate. No invoices were sent to SAT following the August 11, 1998 payment, and the proof of claim filed in the Bankruptcy Court by TIMCO relates only to services that were provided prior to August 11, 1998. While the services performed subsequent to the preferential payment obviously benefitted Aerolease (for which Aerolease paid), TIMCO has failed to persuade the Court, and the record does not reflect, that the market value of SAT's leasehold interest in the Aircraft was increased or that SAT's estate received some tangible value following the August 11, 1998 preferential payment.

In short, there was no showing that the activities of TIMCO following the preferential payment increased or replenished SAT's estate in the manner required by § 547(c)(1) or (c)(4).

---

[6] The lease obligated SAT to pay for maintenance and repairs on the Aircraft.

16

The decision of the Bankruptcy Court is therefore **AFFIRMED**.

**IT IS SO ORDERED.**

December 16, 2005                                             /s/ John D. Holschuh
                                                              John D. Holschuh, Judge
                                                              United States District Court